## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SIMPLEXITY, LLC, *et al.*, | ) | Case No. 14-10569(KG) |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| CHARLES A. STANZIALE, JR., Chapter 7 | ) | |
| Trustee for the Estates of Simplexity, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 16-50212(KG) |
| | ) | |
| VERSA CAPITAL MANAGEMENT, LLC, | ) | |
| PAUL HALPERN, GREGORY L. SEGALL, | ) | |
| RAYMOND C. FRENCH, DAVID S. LORRY, | ) | |
| THOMAS A. KENNEDY, DAVID MOIR, | ) | |
| RANDALL R. SHULTZ, FRANK C. BENNETT, | ) | |
| III, JOHN BAILEY, WALTER LEACH, and | ) | |
| KESHA EVANS, | ) | |
| | ) | |
| Defendants. | ) | **Re Dkt. Nos. 28 & 30** |

## MEMORANDUM OPINION

The Court will address the defendants' motions to dismiss the Complaint (the "Motions") which the Chapter 7 Trustee (the "Trustee") brought against them. For the reasons contained in this Memorandum Opinion, the Court will not dismiss the Complaint, except for the piercing the corporate veil count which the Court will dismiss.

## FACTS

### A. The Parties

The plaintiff is the Chapter 7 Trustee for the estates of Simplexity, LLC ("Simplexity"), Simplexity Services, LLC ("Services") and Adeptio INPC Holdings, LLC ("Holdings") (collectively, the "Debtors").    The Trustee has brought suit in the adversary proceeding against John Bailey, Frank Bennett, III, Kesha Evans, Walter Leach and David Moir (the "Simplexity Defendants"), each of whom was an officer or authorized person of Simplexity and/or Services. The Trustee has also brought suit against Versa Capital Management, LLC, ("Versa"), Paul Halpern, Gregory L. Segall, Raymond C. French, David S. Lorry, Thomas A. Kennedy and Randall R. Shultz (the "Versa Defendants").    According to the Complaint, the individual defendants and their entity associations are as follows:

| | |
|---|---|
| Paul Halpern | Simplexity, Holdings, Versa |
| Gregory L. Segall | Simplexity, Holdings, Versa |
| Raymond C. French | Simplexity, Holdings, Versa |
| David S. Lorry | Simplexity, Services, Holdings, Versa |
| Thomas S. Kennedy | Simplexity, Services, Holdings, Versa |
| David Moir | Simplexity, Services |
| Randall R. Shultz | Simplexity, Services, Holdings, Versa |
| Frank C. Bennett | Simplexity |
| John Bailey | Simplexity, Services |
| Walter Leach | Simplexity, Services |
| Kesha Evans | Simplexity |

In the Complaint, the Trustee refers to the Simplexity Defendants and the Versa Defendants jointly as "the Defendants," a denomination the Court will also use. In reality, however, the Defendants are two groups of defendants, the Simplexity Defendants and the Versa Defendants.

### B.    The Allegations in the Complaint[1]

Services is a single-member Delaware limited liability company owned and managed by Simplexity. Compl. ¶ 23. Simplexity is a single-member Delaware limited liability company which Holdings owns. Compl. ¶ 24. Holdings is a two member Delaware limited liability company which Versa manages. Compl. 25.

The Debtors were at one time the largest on-line sellers of mobile phones and other wireless products. Compl. ¶ 33. The Debtors provided an online platform for over 200 other retailers, including Staples, Target, Radio Shack, Walmart and Sam's Club to name a few. Compl. ¶ 34. The retailers sold, activated and serviced cell phones for users through Debtors. *Id.* The Debtors employed 219 people and engaged 285 full time contractors before the bankruptcy filing. Compl. ¶ 35. In the Spring of 2013, the Debtors' enterprise value was estimated at between $46 million and $100 million. Compl. ¶ 36.

---

[1] The Court will accept as true all well-pleaded factual allegations in the Complaint and will draw all inferences from the facts alleged in the light most favorable to the Trustee. *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003).

The Debtors began to incur operating losses when they shifted from on-line activation to in-store activation. Compl. ¶ 36.   Beginning in the Spring of 2013, through September 2013, the Debtors negotiated multiple forbearance agreements with their lender, First Third Bank ("FTB"). Compl. ¶ 40.   Simplexity and Services were borrowers and Holdings was a guarantor under a credit agreement which provided for a revolving loan commitment of up to $15 million and a $30 million term loan (the "FTB Credit Facility"). Compl. ¶ 27.

FTB and the Debtors entered into a one-year forbearance agreement on September 20, 2013. This agreement required a $6.5 million guaranty from Holdings and Versa for all of the Debtors' obligations under the FTB Credit Facility.   Any amounts contributed to Debtors by Versa or Holdings as capital or subordinated debt would reduce the guaranty on a dollar-for-dollar basis. Compl. ¶ 41.   Versa contributed the full $6.5 million of the guarantee as additional capital to the Debtors in calendar year 2013. Compl. ¶ 44.   On or about December 10, 2013, Versa notified FTB that it would increase its pledge by an additional $1 million to avoid a sale trigger under the September 20, 2013 forbearance agreement. Compl. ¶ 45.

On January 16, 2014, the Debtors provided to FTB a borrowing base report for December 15, 2013, showing an over-advance of approximately $4.5 million under the FTB Credit Facility. This prompted FTB to commence discussions with Versa to infuse additional capital into the Debtors to correct the "out of formula" situation. Compl. ¶ 46.

4

On February 18, 2014, FTB demanded that Versa inject $5 million of additional capital into the Debtors to resolve the Debtors' short-term cash shortfall. Versa responded that it was only in a position to fund $2.5 million. Compl. ¶ 47.

Then, on February 25, 2014, FTB terminated the forbearance and proposed terms for "an immediate, short term forbearance" through March 14, 2014, to replace the terminated forbearance agreement. Compl. ¶ 50.   FTB demanded that Versa contribute the remaining $990,000 due under the September 20, 2013 forbearance agreement. Versa did so without first obtaining any additional forbearance agreement from FTB or otherwise ensuring that the funds would be available for use by the Debtors and not swept and applied to the FTB Credit Facility. Compl. ¶ 52.   In response, on March 4, 2014, FTB formally terminated all further forbearance and expressly reserved the right to exercise remedies under the FTB Credit Facility. Compl. ¶ 52.   On Friday March 7, 2014, Versa wrote a letter on behalf of Holdings warning FTB that if it seized or blocked use of the Debtors' cash on deposit, the Debtors would "not have sufficient funds to meet its upcoming payroll" and that the resulting loss of workforce would "destroy the going-concern value" and "diminish the prospects for any meaningful recovery" to the Debtors' stakeholders. Compl. ¶ 54.

On Monday March 10, 2014, FTB informed the Defendants that it was planning to sweep all cash receipts, leaving no cash available for the upcoming employee payroll. Compl. ¶ 59.   Later that day, FTB swept all funds in the Debtors' bank accounts, totaling

approximately $1.2 million, and indicated its intent to continue sweeping all receivables paid into and other amounts from the Debtors' bank accounts and applying all amounts so swept to the FTB Credit Facility. Compl. ¶ 60.

On March 12, 2014, the Simplexity Defendants and the Versa Defendants fired the vast majority of the Debtors' employees, shut down the Debtors' operations, and began discussions with Wal-Mart Stores, Inc. ("Walmart") regarding a sale of certain of the Debtors' assets outside of bankruptcy and Walmart's hiring of certain of the Debtors' employees. Compl. ¶ 63.

The Debtors commenced chapter 11 cases on March 16, 2014. Compl. ¶ 65.   On March 17, 2014, former Simplexity employee Kevin Williams, on behalf of himself and all others similarly situated, filed a class action adversary proceeding complaint against Simplexity for alleged violations of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, *et seq.* (the "WARN Act") and similar state wage payment laws on the basis that the Debtors' employees had been terminated without having been provided the required notice. Compl. ¶ 66.

Ultimately, the Debtors commenced an auction process to sell certain of the Debtors' assets in a sale under section 363(f) of the Bankruptcy Code, with Walmart as the stalking horse bidder and ultimate purchaser for $10 million in cash. Compl. ¶ 67. Walmart hired all of the Debtors' former employees who were critical to monetizing the value of the Debtors' assets. Compl. ¶ 68.   After a 30-day "go shop" period, none of the

potential bidders in the auction process submitted a competing bid. Walmart therefore concluded its purchase of the Debtors' assets. Compl. ¶ 69 and 70.

## Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.   Venue in this District of Delaware is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Legal Standard

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") provides for dismissal for "failure to state a claim upon which relief can be granted." Rule 12 (b)(6) is connected with Federal Rule of Civil Procedure 8(a)(2) ("Rule 8(a)(2)"), which provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." In its seminal *Twombly* decision, the Supreme Court ushered in the modern era of notice pleading under Rule 8(a)(2). The Supreme Court observed that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The *Twombly* standard is one of "plausibility" and not "probability;" "it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Id.* at 556. "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge

7

that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. (quotation omitted).

In its *Phillips* decision, the United States Court of Appeals for the Third Circuit addressed the *Twombly* decision, observing that "the notice pleading standard of Rule 8(a)(2) remains intact, and courts may generally state and apply the Rule 12(b)(6) standard, attentive to context and [a] showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 555). Thus, the Third Circuit found that "[i]t remains an acceptable statement of the standard, for example, that courts 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Id*. (citation omitted).

Subsequent to the *Phillips* decision, the Supreme Court again addressed the Rule 8(a)(2) notice pleading standard in its *Iqbal* decision. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009). The *Iqbal* decision makes it clear that the *Twombly* plausibility standard applies to all civil suits filed in federal courts and identifies two "working principles" underlying the *Twombly* decision. *Id.* at 678. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do

not suffice." *Id*. (citation omitted). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted).

In its *Fowler* decision, the Third Circuit usefully synthesized the foregoing authorities as follows:

> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not 'show[n]'—'that the pleader is entitled to relief.'" This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

*Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted). With these principles in mind, the Court will proceed with its analysis of the Motions.

<u>DISCUSSION</u>

The Trustee's claim at its essence is that Defendants refused to act in the face of FTB's actions described above and thereby did not preserve the value of Debtors as a going concern. In addition, the Trustee complains that Defendants' actions or inaction exposed Simplexity to the employment related claims.  Principally, the Trustee claims

that the Defendants overlooked or deliberately ignored the facts and failed to file for bankruptcy protection.   All of Debtors' cash was held at FTB which swept the cash. Only thereafter did Debtors file for bankruptcy.   The Trustee alleges that in the face of FTB's warnings, the Defendants failed to act to protect Debtors' assets.   The Defendants have raised a number of defenses in support of the Motions which the Court will discuss.

A.  The Exculpation Provisions

Simplexity, Services and Versa are all Delaware limited liability companies. Their limited liability company agreements (the "LLC Agreements") each provide that there will be no liability for the Defendants' breaches of their fiduciary duties.

The LLC Agreements comport with the Delaware Limited Liability Company Act which provides that for limited liability companies formed in Delaware, it is permissible to remove fiduciary duties by providing for their removal in the limited liability company agreement.   Thus, "[a] limited liability company agreement may provide for the limitation or elimination of any and all liabilities for breach of contract and breach of duties (including fiduciary duties) of a member, manager or other person . . . providing that a limited liability company agreement may not limit or eliminate liability for any act or omission that constitutes a bad faith violation of the implied covenant of good faith and fair dealing." 6 Del. C § 1101(e).

The Amended and Restated Limited Liability Company Agreement, dated December 21, 2007 of Simplexity (the "Simplexity Agreement") provides in part that:

Section 8.1     Limitation on Liability.

No current or former Manager of [Simplexity] shall be personally liable to [Simplexity] or the Member for monetary damages for breach of fiduciary duty as Manager of [Simplexity] . . . provided, however, that this provision shall not eliminate liability of a Manager (1) for any breach of the Manager's duty of loyalty to [Simplexity] and the Member, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law . . . .

Section 8.2     Limitation of Duties; Conflict of Interest.

To the maximum extent permitted by applicable law, the Company and each Member, Manager, officer and employee of the Company hereby waives any claim or cause of action against any [Versa] Person for any breach of any fiduciary duty to the Company or its Member or any of the Company's Affiliates by any such Versa Person, including, without limitation, as may result from a conflict of interest between the Company or its Members or any of the Company's Affiliates and such Versa Person or otherwise . . . [W]ith respect to actions or omissions by any Manager or officer of the Company who may be a Versa Person, such waiver shall not apply to the extent the act or omission was attributable to the Manager's gross negligence or knowing violation of law as determined by a final judgment, order or decree of a court of competent jurisdiction (which is not appealable or with respect to which the time for appeal therefrom has expired and no appeal has been perfected).

11

The Limited Liability Company Agreement for Services, dated March 28, 2012 (the "Services Agreement"), provides in part that:

**Section 8.01  Exculpation.**

(a)      <u>No Fiduciary Duties.</u> To the fullest extent permitted by law:

(i) . . . no Indemnified Party shall owe any duty (including fiduciary duties) to [Services], the Member or any other Person that is a party to or is otherwise bound by this Agreement. . . provided, however, that this clause (i) shall not eliminate the implied contractual covenant of good faith and fair dealing, and

(ii)   No Indemnified Party shall have any personal liability to the Company, the Member, or any other that is a party to or is otherwise bound by this Agreement for monetary damages in connection with any act or failure to act, or breach . . . provided however, that this clause (ii) shall not limit or eliminate liability for any act or omission that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing.

\*     \*     \*

**Section 10.02 Conflict of Interest.** To the maximum extent permitted by  applicable law, the Company and the Member hereby waive any claim or cause of action against any Versa Person for  any  breach  of  any fiduciary  duty  to  the  Company  or  the  Member or  any  of the Company's Affiliates by any such Versa Person, including, without limitation, as may result from a conflict of interest between the Company or the Member or any of the  Company's Affiliates and such Versa Person.  The Member acknowledges and agrees that in the event of any such conflict of interest, each such Versa Person may, in the absence of bad faith, act in the best interests of such Versa Person, including without limitation its Affiliates, employees, agents and representatives. No Versa Person shall be obligated to recommend or take any action in its capacity as an officer or a Member of the Company that prefers the interests of the Company or the Member or any of the Company's Affiliates over the interests of such Versa Person, and each of the Company and the Member hereby waives the fiduciary duty, if any, of such Versa Person to the Company and/or the Member, including, without limitation, in the event of any such

12

conflict of interest or otherwise. No Versa Person shall be liable for monetary damages for losses sustained, liabilities incurred, or benefits not derived by the Member in connection with such decisions.

Lastly, the Amended and Restated Limited Liability Company Agreement for Adeptio INPC Holdings, LLC, dated April 8, 2008 (the "Versa Agreement") provides in pertinent part that:

\* \* \*

**Section 9.01 Exculpation.** No Indemnified Party shall be liable, responsible or accountable in damages or otherwise to the Company or the Members for any act or omission of the Indemnified Party on behalf of the Company, provided that the act or omission is not determined by a court to be due to such Indemnified Party's willful misconduct or recklessness.

\* \* \*

**Section 9.03 <u>Limitation of Duties: Conflict of Interest.</u>**   To the maximum extent permitted by applicable law, the Company and each Member hereby waives any claim or cause of action against the Manager and each Versa Controlled Party and their respective Affiliates, employees, agents and representatives, . . . provided that, with respect to actions or omissions by the Manager, such waiver shall not apply to the extent the act or omission was attributable to the Manager's gross negligence or knowing violation of law . . . provided that, with respect to actions or omissions by the Manager, such waiver shall not apply to the extent the act or omission was attributable to the Manager's gross negligence or knowing violation of law as determined by a final judgment, order or decree of a court of competent jurisdiction . . .

\* \* \*

An exculpatory clause is considered an affirmative defense and will not provide the basis for dismissal.   *See*, *e.g.*, *Miller v McCown DeLeeuw & Co., Inc.* (*In re The Brown*

13

*Schools*) 368 B.R. 394, 401 (Bankr. D. Del. 2007); *Mervyn's LLC v. Lubert-Adler Group IV, LLC* (*In re Mervyn's Holdings, LLC*), 426 B.R. 488, 502 (Bankr. D. Del. 2010).   *See also Burtch v. Opus L.L.C.* (*In re Opus East L.L.C.*), 480 B.R. 561, 572 (Bankr. D. Del. 2012 ("Because the Defendants' only argument to dismiss the counts for breach of fiduciary duty and aiding and abetting breach of fiduciary duty is the exculpation clause, the Court will deny the motion to dismiss Counts 2-17 and 50-51").

The Defendants cite *In re Midway Games, Inc.*, 428 B.R. 303 (Bankr. D. Del. 2010), for the proposition that a court can and should consider exculpatory clauses on a motion to dismiss.   *Midway Games* cannot be read so broadly or affirmatively.   In *Midway Games* the Court did in fact consider the exculpation clause on a motion to dismiss.   However, the Court made it clear that consideration of the exculpatory clause was limited to violations of the fiduciary duty of care. 428 B.R. 317.   Here, the Trustee charges the Defendants with gross negligence and disloyalty in addition to violation of the duty of care.   The Court will therefore follow the majority of cases and will not consider the exculpatory clauses in deciding the Motions.

The Motions are therefore denied insofar as they rely upon the exculpatory clauses in the LLC Agreements. The Defendants' remaining arguments are the following: the Defendants properly exercised their business judgment which protects them from suit, the Trustee's claims are in reality premised on the disfavored theory of deepening insolvency, the Trustee fails to state a claim in the Complaint, and the Trustee does not

state an aiding and abetting claim.

## B. Breach of Fiduciary Duty Claims

The Court has ruled that the exculpation provisions contained in the LLC Agreements do not serve as a basis for dismissal of the fiduciary duty claims. For purposes of the Motions, the Court must now confront the breach of fiduciary duty claims. The claims taken from the Complaint are:

- Versa and the individual defendants owed fiduciary duties of care, loyalty and/or good faith and fair dealing to Debtors and their creditors. Compl. ¶ 73.

- The Defendants refused to pursue opportunities to monetize Debtors' going concern value because the opportunities did not sufficiently benefit Adeptio Funding, LLC[2] or Versa. Compl. ¶ 75.

- The Defendants knew or should have known the requirements of the WARN Act, the Maryland Wage Payment and Collection Act and the Virginia Payment of Wage Law and by their actions or inaction created potential WARN Act liability. Comp. ¶ 78.

- The Defendants "recklessly and with gross negligence" failed to preserve and protect the Debtors' going concern values. Compl. ¶ 80.

---

[2] Adeptio Funding, LLC, is mentioned in the Complaint as an affiliate of Versa.

15

The Trustee argues that the traditional fiduciary duties are due care, good faith and loyalty and that the good faith duty is a subset of the duty of loyalty. *Malone v. Brincat*, 722 A. 2d 5, 10 (Del. 1998) and *Stone v. Ritter*, 911 A. 2d 362, 370 (Del. 2006). The Trustee further argues that the foregoing duties are defined as follows:

(1)　Duty of care is based on notions of gross negligence, including that directors in making a decision inform themselves of all material information. *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A. 2d 150, 192 (Del. Ch. 2005).

(2)　Duty of loyalty requires that there be no self-interest in a transaction, and that the best interests of the company and its schedules are of greater concern than the directors' own interest. *Cede & Co. v. Technicolor*, 634 A. 2d 345, 361 (Del. 1993).

(3)　Duty of good faith requires the pursuit of the best interests of the corporation and its stockholders. The Delaware Supreme Court described the duty in *Brehm v. Eisner* (*In re Walt Disney Co. Derivative Litig.*), 906 A. 2d 27, 67 (Del. 2006):

> A failure to act in good faith may be shown for instance, where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate applicable position law, or where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties.

## 1.　The Business Judgment Rule

In contrast to the Trustee's arguments, the Defendants argue that the business judgment rule bars the Trustee's claims raised in the Complaint. The business judgment rule is a presumption that "in making a business decision the directors of the corporation

16

acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company."   *Aronson v. Lewis*, 473 A. 2d 805, 812 (Del. 1984). If a plaintiff wants to overcome the presumption of the business judgment rule, the plaintiff must provide evidence that the fiduciaries breached their duties of care or loyalty.   Failure to meet the evidentiary burden protects directors' decisions.   *Cede & Co. v. Technicolor, Inc.*, 634 A. 2d at 361.

The difficulty with the business judgment rule arguments by the Defendants is that the rule is also an affirmative defense and not to be considered on a Rule 12(b)(6) motion to dismiss.   *See Stanziale v. Nachtomi* (*In re Tower Air, Inc.*), 416 F. 3d 229, 238 (3d Cir. 2005) ("Generally speaking, we will not rely on an affirmative defense such as the business judgment rule to trigger dismissal of a complaint under Rule 12(b)(6) . . . .   A complaint may be dismissed under Rule 12(b)(6) where an unanswered affirmative defense appears on its face, however".); *ALA, Inc. v. CCAir, Inc.*, 29 F. 3d 855, 859 (3d. Cir. 1994) (an affirmative defense may be considered if the issue appears on the face of the complaint); and *Ad Hoc Committee of Equity Holders of Tetonic Network, Inc. v. Wolford*, 554 F. Supp. 2d 538, 556-57 (D. Del. 2008) (business judgment rule did not implicitly appear on the face of the complaint and therefore the rule was not considered on a motion to dismiss).   Here, there is no question that the Trustee did not raise the business judgment rule in his Complaint, and thereby did not give the Defendants any opening to raise the affirmative defense in the Motions.   The Court will not judge the Complaint on the basis

of the business judgment rule and, therefore, will not dismiss the Complaint on the Defendants' arguments that they exercised their business judgment.

## 2.  Deepening Insolvency

The Defendants argue that the Trustee's claims are in reality deepening insolvency claims, and that deepening insolvency does not state a claim upon which relief can be granted.   That is the law in Delaware.   *See*, *North Am. Catholic Educational Programming Foundation, Inc. v. Gheewalla*, 930 A. 2d 92 (Del. 2007); and *Trenwick Am. Litigation Trust v. Ernst & Young L.L.P.*, 906 A.2d 168 (Del. Ch. 2006).   The holdings of Delaware courts dealing with the issue center on the following, as noted by the Versa Defendants:

> Delaware law imposes no absolute obligation on the board of a company that is unable to pay its bills to cease operations and to liquidate.

*Trenwick*, 906 A. 2d at 204.

> If a plaintiff cannot state a claim that the directors of an insolvent corporation acted disloyally or without due care in implementing a business strategy, it may not cure that deficiency simply by alleging that the corporation became more insolvent as a result of the failed strategy.

*Id.* at 205.

The Court does not read the Trustee's claims as deepening insolvency claims. Instead, the claims ask why given the notice by FTB that it was about to shut Simplexity down did the Defendants not file for bankruptcy and thereby ameliorate the harm.   It was the action or inaction in the face of insolvency itself, not deepening insolvency, that the Trustee complains about.   Was it gross negligence, disloyalty, or disregard of the law

18

that resulted in Defendants' inaction?   As the Court reads the Complaint, that is what the Trustee is alleging.   Therefore, this adversary proceeding is about the Defendant's failure to act in the face of insolvency, and does not implicate deepening insolvency.

### 3.   In General

The Defendants complain that the Complaint is poorly written and fails to state a claim.   The Court has held, to the contrary, that the Complaint does adequately state the claim that the Defendants were grossly negligent or acting in disregard of the law in not filing for bankruptcy to mitigate the harm FTB did to Debtors.   As the Third Circuit made clear in *Stanziale v. Nachtomi* (*In re Tower Air, Inc.*). 416 F. 3d at 236, federal courts utilize the federal notice pleading standard, unlike the Delaware Court of Chancery which requires the pleading of facts with specificity.   *Id.* at 236.   The heightened standard is not employed by federal courts as long as the *Iqbal* and *Twombly* requirements are met.   The Trustee has pleaded enough facts to "raise a reasonable expectation that discovery will reveal evidence of" gross negligence, disregard of the law and perhaps disloyalty, *Twombly*, 550 U.S. at 556.   The Trustee has done all that is necessary to raise the plausibility of his claims.

### 4.   Employment Claims

The Trustee alleges that "Versa and the Controlling Parties [i.e., the Defendants] were aware, or should have been aware, of the requirements of the WARN Act, the Maryland Wage Payment and Collection Act, § 3507, *et seq.*, and the Virginia Payment of

Wage Law, § 40.1 *et. seq.*"    The Trustee further alleges that the Defendants thereby breached their fiduciary duties.   Once again, the Trustee has met the *Iqbal* and *Twombly* tests, and thereby has stated a claim.

### C.   Aiding and Abetting

The Trustee alleges in Count Two, "Aiding and Abetting Breach of Fiduciary Duties" that:

> 86.      To the extent any of the Controlling Parties is determined not to have owed fiduciary duties to the Debtors and/or their respective creditors, such subset of the Controlling Parties is liable for knowingly aiding and abetting the breaches of fiduciary duties committed by the other Controlling Parties.

An aiding and abetting claim requires the plaintiff to establish the existence of a fiduciary relationship, a breach of the fiduciary's duty, the defendants' knowing participation in the breach by the defendant and damages proximately caused by the breach.   *Official Unsecured Creditors' Comm. of Broadstripe, LLC*, 444 B.R. 51, 107 (Bankr. D. Del. 2010).   The Court finds that the Trustee has stated a claim for aiding and abetting. The Trustee complains that the Defendants each held a leadership position in one or more of the Debtors (Compl. ¶¶ 11-22) and breached their duties to Debtors by assisting others to breach fiduciary duties.   The Court will deny the Motions with respect to the aiding and abetting claims, since in the Complaint the Trustee alleges harm to the Debtors.

D.   Piercing the Corporate Veil

The Trustee in Count III of the Complaint asks the Court to pierce the limited liability company veils of the Debtors to impose liability on Versa.   The Court will not pierce the veil.   As the Versa Defendants note, the Trustee's veil piercing claims are contrary to Delaware law.   Piercing the veil is limited to exceptional circumstances and requires alleging facts which demonstrate that the entities operated as one entity resulting in injustice or unfairness.   *Burtch v. Opus, LLC* (*In re Opus East L.L.C.*), 528 B.R. 30, 57 (Bankr. D. Del. 2015).   The Trustee does not allege facts necessary to support a veil piercing claim – conclusory allegations are insufficient.   *Official Comm. of Unsecured Creditors v. Bay Harbour Master Ltd.* (*In re BHS&B Holdings LLC*, 420 B.R. 112, 134 (Bankr. S.D.N.Y. 2009) (Committee failed to plead veil piercing theory).   The Trustee's allegations that Versa operated Debtors as a "single unit" while insolvent are not facts but conclusory allegations which do not satisfy the *Iqbal* and *Twombly* standards. Therefore, the Court will dismiss the veil piercing claims.

E.   The Preferential Transfers

In the Complaint, Counts IV and V, the Trustee seeks to avoid and recover payments which Simplexity made to Versa during the ninety day and one-year periods prior to the Petition Date.   The Defendants move to dismiss the claims on the grounds that the Trustee does not provide sufficient facts and failed to describe the business relationship between them and the Debtors.   The Trustee attached to his Complaint

21

charts identifying each transfer with the date of payment, the payment amount and the check or wire number.    The information provided in the Complaint is sufficient. Further, the Trustee alleged sufficient facts regarding insolvency to meet the Defendants' argument that insolvency is inadequately pled.

<u>CONCLUSION</u>

The Court acknowledges that the Complaint is loosely drafted, which made it difficult but not impossible for the Court to follow the Trustee's legal theories. Therefore, with the exception of the veil piercing count which the Court will dismiss, for the reasons explained the Court will deny the Motions.    An Order will issue.

Dated: January 5, 2017

_____
KEVIN GROSS, U.S.B.J.

22