IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re ) | Chapter 7 | |
| ) | | |
| Simplexity, LLC, *et al.*, ) | Case No. 14-10569 (KG) | |
| ) | Jointly Administered | |
| Debtors. ) | | |
| ) | | |
| Charles A. Stanziale, Jr., Chapter 7 ) | | |
| Trustee for the Estates of Simplexity, ) | | |
| LLC, *et al.*, ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | Adv. Pro. No. 16-50212 (KG) | |
| ) | | |
| Versa Capital Management, LLC, *et al.*, ) | | |
| ) | | |
| Defendants. ) | **Re: D.I. 125** | |

## MEMORANDUM OPINION

Defendants have moved (the "Motion") to compel the Chapter 7 Trustee (the "Trustee") to produce documents which now consist of communications by the Chapter 7 Trustee and his lawyers at Hunton & Williams ("H&W"), with Fifth Third Bank ("FTB").[1] The Trustee and H&W withheld 191 documents asserting the ground of common interest between the Chapter 7 Trustee, H&W and FTB. For the reasons which

---

[1] Defendants originally sought production of a larger volume of documents, including communications involving settlement discussions. The Trustee has now produced approximately 288 documents included in the request, leaving 191 documents at issue.

follow, the Court will order the Chapter 7 Trustee and H&W to produce the withheld documents within seven (7) days from the entry of the accompanying Order.

## FACTS

Simplexity, LLC, and related entities (the "Debtors") prior to the bankruptcy case were the largest independent online retailer of mobile phones and other wireless products. Compl. ¶¶ 33-34. D.I. 1. The Debtors were owned indirectly by two funds which Versa Capital Management, LLC, managed. *Id.*, ¶¶ 23-25. FTB provided Debtors with a senior secured credit facility. *Id.*, ¶ 27. After Debtors defaulted on covenants, and following forbearance agreements between Debtors and FTB (*id.*, ¶¶ 41, 49-50), the latter swept the funds in Debtors' bank accounts (*id.*, ¶ 60) which resulted in Debtors ceasing operations and thereafter filing for bankruptcy. *Id.*, ¶¶ 63, 65.

After the bankruptcy filing the Creditors' Committee retained H&W to investigate FTB's conduct. H&W worked intensely, logging more than 1,500 hours of work at a cost of more than one million dollars. D.I. 255, 341, 395, 469, 470, 512, 570 and 572. H&W reviewed many thousands of documents and deposed witnesses, including FTB representatives.

Following their investigation, H&W prepared a complaint against FTB with supporting exhibits. In the draft complaint, H&W charged FTB with serious wrongdoing and alleged that FTB's actions destroyed Debtors. According to the complaint, FTB was solely responsible for destroying Debtors' $40 million to $100 million in going concern

value and subjecting Debtors to more than $5 million in WARN Act liability. Thereafter, H&W sought standing to file the complaint. Chapter 11 Case, D.I. 443.

The potential case against FTB resulted in a settlement whereby, *inter alia*, H&W received $1 million toward its fees and there were arrangements made for future distributions from any recoveries of 65% for FTB and 35% for the Chapter 7 estate.

After the Court approved the settlement, the Chapter 7 Trustee, represented by H&W, brought the instant adversary proceeding naming the Defendants. The Defendants are troubled by the unprosecuted allegations against FTB, and that in response to a WARN Act class action complaint alleging that employees had been terminated without the required notice the Trustee's answer includes an affirmative defense that the estate is not liable because the termination was unforeseeable. At the same time, in the adversary proceeding the Trustee claims to the contrary and argues that that Defendants knew or should have known that FTB was going to sweep Debtors' accounts.

Defendants served a document request on the Trustee and a subpoena on H&W[2] requesting post-settlement communications with FTB. The Trustee and H&W withheld the documents as privileged claiming common interest between the Trustee and H&W, and FTB.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. § 1409.

## DISCUSSION

The issue presented is whether the Trustee and H&W have properly withheld common interest legal documents or, as Defendants argue, they are withholding common interest documents of a financial nature which are not privileged. The Court finds that the documents which the Trustee and H&W have withheld are of a financial nature and

---

[2] Defendants requested five categories of documents. The Trustee and H&W have produced documents requested in four of the categories. The four categories to which the Trustee and H&W have responded are:
- Communications with FTB withheld as common interest privileged, pre-settlement with FTB: 13 documents.
- Communications with FTB withheld as "Confidential Settlement Discussions" subject to *Federal Rule of Evidence* 408: 249 documents.
- Communications with the WARN Plaintiff withheld as "Confidential Settlement Discussions" subject to *Rule 408*: 6 documents.
- Communications with the WARN Plaintiff in his capacity as a member of the Committee withheld for attorney client privilege and/or work product: 20 documents.

the Court will sustain Defendants' challenge and direct the Trustee and H&W to produce their post-settlement communications with FTB.

## The Common Interest Privilege

It is first necessary to define the "common interest privilege" before explaining why it does not apply in the circumstances presented. It is communication in which "(1) the communication was made by separate parties in the course of a matter of common interest; (2) the communication was designed to further that effort; and (3) the privilege has not otherwise been waived." *In re Cherokee Simeon Venture I, LLC,* 2012 WL 12940975, at *2 (Bankr. D. Del. May 31, 2012). The common interest privilege can apply only if the parties share a "substantially similar legal interest." *In re Teleglobe Commc'ns Corp.*, 493 F. 3d 345, 364 (3d Cir. 2007). Moreover, the burden is on the party invoking the common interest privilege, in this case the Trustee and H&W, to show its existence.

## The Trustee's and H&W's Case for the Privilege

The Trustee and H&W argue that: (1) the common interest privilege does not require a formal, written agreement, *Cherokee Simeon Venture*, 2012 WL 12940975 at *2; (2) the parties do not have to be in complete accord, *In re Tribune Co.*, 2011 WL 386827, *4 (Bankr. D. Del. Feb. 3, 2010); (3) the common interest privilege is not limited to communications among co-defendants, *Tribune Co.*, 2011 WL 386827, at *4; and (4) because FTB is the bankruptcy estate's largest creditor, the Court should honor the common interest privilege to enhance the estate's interests, *In re Mortgage & Realty Trust*,

5

212 B.R. 649 (Bankr. C.D. Cal. 1997), *Cherokee Simeon Venture*, 2012 WL 12940975 at *2, *Tribune Co.*, 2011 WL 386827 at *4.

The Trustee and H&W rely heavily on *In re Leslie Controls, Inc.*, 437 B.R. 493, 496 (Bankr. D. Del. 2010) where the court found that communications among the debtor, *ad hoc* committee and future claimants' representative were protected by the common interest privilege.  In *Leslie Controls*, the parties were communicating about increasing the available insurance proceeds, a legal interest which they shared.

## The Defendants' Case Against the Privilege

The Defendants argue that after the settlement with the Trustee, FTB's interest in the adversary proceeding is financial or commercial, not legal.  FTB is not a party or potential party in the litigation and any ruling by the Court will have no legal repercussions on FTB.  Instead, "FTB has nothing more than a rooting interest in the outcome of the Trustee's case."  *Versa Defendants' Brief in Support of the Motion to Compel*, page 13 (D.I. 126).

There is a Common Interest Agreement between the Trustee and FTB, the existence of which does not create the common interest privilege.  *See*, *e.g.*, *Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc.*, 870 N.E. 2d 1105, 1113 (Mass. 2007) (holding that the common law, not a writing, creates the common interest privilege); and *Aetna Cas. & Sur. Co. v. Certain Underwriters at Lloyds London*, 676 N.Y.S. 2d 727, 733 (N.Y. Sup. Ct. 1998) (holding that an agreement does not create a privilege).

The Defendants cite several cases in support of their position that FTB and the Trustee and H&W do not share a common legal interest. The cases are *In re Rivastigmine Patent Litig.*, 2005 WL 23190005, at * 2 (S.D.N.Y. Sept. 22, 2005); *In re Vitamin C Antitrust Litig.*, 2011 WL 197583, at * 5 (E.D.N.Y. Jan. 20, 2011); and *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 251 F.R.D. 316, 326 (N.D. Ill. 2008). In all of the cases, the courts found that there was no common legal interest but, instead, a commercial, rooting interest.

It is worth noting that one of the Defendants' arguments is that FTB should be considered to be a litigation financing lender. The Trustee and H&W argue that FTB is not, and that even if it were, the communications between FTB and the Trustee and H&W continue to be privileged.

## The Court's Ruling

Initially, the Court notes that FTB is not a litigation financing lender. FTB settled with the Debtors and will receive a percentage of the proceeds from this litigation but it did not advance funds for the litigation. Instead, FTB is a secured creditor of the bankruptcy estate which the Trustee is administering.

However, the fact that FTB is not a litigation financing lender does not bear upon the Court's ruling. That ruling is that FTB shares a financial interest in common with the Trustee. It does not share a common legal interest with the Trustee. The Court reaches its conclusion from case law and a common sense approach to the issue. The Court can

certainly understand why the Trustee and H&W oppose the Motion. They do not want to produce the documents to the Defendants. But they are wrong.

The Court begins its discussion with a seminal decision in the Third Circuit, *In re Teleglobe Commc'ns Corp.*, 493 F. 3d 345 (3d Cir. 2007). The Third Circuit first discussed the importance of the attorney-client privilege and concluded its discussion of that portion of the opinion with the following:

> Thus following *Upjohn's*[3] lead in not applying the privilege mechanically does not counsel in favor of applying the privilege anytime it might increase the flow of information; rather, *Upjohn* counsels a more nuanced inquiry into whether according a type of communication protection is likely to encourage compliance-enhancing communication that makes our system for resolving disputes more operable.

In *Teleglobe* the Third Circuit soon turned to the "Community-of-Interest (or Common-Interest) privilege." The Third Circuit concluded that "members of the community of interest must share at least a substantially similar legal interest."[4] *Id.* at 365.

Next is *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316 (N.D. Ill. 2008)[5], in which the court held that the plaintiff's communications with Spehar Capital, a firm that had provided financing, were not privileged because the two shared a common

---

[3] *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

[4] The Third Circuit discussed the approach taken in the RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 76 cmt.e, which talks about the common interest being "legal, factual, or strategic in character." The Third Circuit did not adopt the approach taken in the RESTATEMENT. *Id.*

[5] The Common Interest Agreement between the parties provides that Illinois law governs.

8

financial rather than legal interest. More specifically, Spehar Capital would merely receive a percentage of plaintiff's recovery. The Trustee argues that the case has no bearing on the present matter because: "Unlike in *Grochocinski*, FTB's [*sic*] holds allowed claims against the estate, and FTB's interest in the litigation against Defendant's is purely aligned with the Trustee's interest." *Objection of the Chapter 7 Trustee and Hunton & Williams*, p. 11 (D.I. 130). However, FTB, unlike Spehar Capital, is not and cannot be a party in litigation involving the same or similar claims as the Trustee asserts here. Instead, FTB will receive money if the Trustee prevails and that equates with a financial rather than a legal interest.

Other case decisions also make the distinction between common legal interest and common financial interest. The privilege pertains only to the common legal interest.

For example, in *In re Rivastigmine Patent Litigation*, 2005 WL 2319005 (S.D.N.Y. Sept. 22. 2005), the court found that the common legal interest applied only when the parties' interests were identical. *Id.* at * 4. In the patent suit, the common interest lasted only until the patents were transferred. The court expressed doubt that a common interest continued after the patents were assigned. Although one of the parties had royalty rights, the court found that "[s]uch economic rights, standing alone, are generally not sufficient to support application of the common interest doctrine. *Id.* at *4.

9

Similarly, in *In re Cherokee Simeone Venture I, LLC*, 2012 WL 12940975 (Bankr. D. Del. May 31, 2012), the Court upheld the privilege because the parties involved shared a common interest in defending against a bad faith claim. The Court found that the parties' communications were "in furtherance of their common effort both to prosecute the case and then to defend against [the] bad faith claim." *Id.* at *3. The Court also found a second reason to uphold the privilege, namely "the purposes of the communications were to develop privileged legal strategies . . . and to prepare for the Hearing." *Id.* at *3. The parties' interests were, in other words, legal in nature and not financial.

In *In re Vitamin C Antitrust Litigation*, 2011 WL 197583 (E.D.N.Y. Jan. 20, 2011), the court rejected the common interest privilege. The court found that the party raising the privilege did not establish that the parties shared a common legal, not commercial interest. Quoting from *Walsh v. Northrop Grumman Corp.*, 165 F.R.D. 16, 18 (E.D.N.Y. 1996), the court wrote:

> The [common interest] doctrine does not extend to communications about a joint business strategy that happens to include a concern about litigation . . . . The parties claiming protection under the doctrine must show that they had a common *legal*, as opposed to commercial, interest . . . .

*Id.*, at * 5 (emphasis in the original). The court went on to note that the outcome of the litigation would have no legal consequences for the other parties to the communications, which is what the Court has attempted to convey about FTB.

In *Gulf Island Leasing, Inc. v. Bombadier Capital, Inc.*, 215 F.R.D. 466 (S.D.N.Y. 2003), the court denied that the interest was legal in nature and therefore overruled the common interest privilege claim. The court found that "the communications involved the amount of money owed" under agreements between the parties. *Id.* at 476. The communications did not involve legal matters. Also, the parties to the communications did not have identical interests. The court therefore denied a protective order.

As noted earlier, the court in *In re Leslie Controls, Inc.*, 437 B.R. 493 (Bankr. D. Del. 2010) upheld the privilege. The debtor had shared communications with an *ad hoc* committee of asbestos plaintiffs and proposed future claimant's representative. *Id.* at 496. The court found that the parties shared a common interest. *Id.* at 502. The insurers, who were challenging the common interest, argued that because the common interest parties were negotiating they lacked commonality. The court found a common interest in that "the parties shared a common interest in maximizing the asset pool, which would include insurance proceeds." *Id.* at 502. The parties met their burden of establishing the requirements for a common interest: (1) the communication was made by separate parties in the course of a matter of common interests, (2) the communication was designed to further that effort, and (3) the privilege was not otherwise waived. *Id.* at 503.

There are many other cases the Court could discuss. It remains clear to the Court that the common interest which the Trustee and FTB share is financial, not legal. FTB has no legal exposure to the Trustee or Defendants. Instead, FTB sits on the sidelines and

11

hopes that the Trustee, with H&W's help, will achieve success, collect on a judgment, and pay FTB its share of the proceeds. Surely that is a financial interest, not a legal one.

There is added texture and importance to Defendants' effort to obtain the 191 withheld documents. FTB was at one time the "bad guy," the target of the Trustee's and H&W's lawsuit. The complaint which H&W drafted named FTB as the sole defendant and the cause of Debtors' downfall. FTB was accused in the draft complaint of destroying Debtors' going concern value and causing in excess of $5 million of WARN Act liability. Defendants want to better understand what happened to flip the case from FTB to Defendants as being responsible for Debtors' misfortune. The withheld documents may or may not explain what happened, but the Defendants must know.

## CONCLUSION

The Court finds that FTB and the Trustee and H&W share a common financial interest rather than a common legal interest. Accordingly, the Court will order the Trustee and H&W to produce to Defendants the 191 withheld documents.

Dated: March 5, 2018

KEVIN GROSS, U.S.B.J.